IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

RICK HAEMERLE,                          §
                                        §
        Plaintiff,                      §
                                        §
v.                                      §        Civil Action No. 3:11-CV-1986-N
                                        §
ALL STATES SHIPPING, LLC; YRC,          §
INC.; and FREEMAN DECORATING            §
SERVICES d/b/a FREEMAN                  §
TRANSPORTATION,                         §
                                        §
        Defendants.                     §

## ORDER

This Order addresses Defendant YRC, Inc.'s ("YRC")'s motion for summary judgment or, alternatively, partial summary judgment [Doc. 28] and Plaintiff Rick Haemerle's cross-motion for partial summary judgment [37]. The Court grants YRC's motion in part and denies it in part, and it denies Haemeerle's motion.

## I. THE PARTIES' DISPUTE OVER LOSS OF AND DAMAGE TO HAEMERLE'S PROPERTY

Haemerle contends that YRC is responsible for loss of and damage to his property. Haemerle arranged with Defendant All States Shipping, LLC ("All States"),[1] for YRC to ship four skids of Haemerle's property (the "Property"), consisting of a prototype Haemerle had designed and associated items, from Haemerle's Missouri home to a trade show in Nevada.

---

[1] All States is a broker or shipper's representative: it arranges for transportation services of shippers like YRC. Def.'s App. Supp. Mot. Summ. J. [hereinafter Def.'s App.] 2.

ORDER – PAGE 1

Two disputes underlie the motions under consideration: (1) whether YRC effectively limited its liability for loss of or damage to the Property in the bill of lading it provided Haemerle, and (2) whether the summary judgment record demonstrates that YRC delivered the Property to the trade show in good order.

### A. The Bill of Lading and YRC's Attempt to Limit Its Liability

All States emailed Haemerle a preprinted bill of lading on April 26, 2010. *See* Def.'s App. 18–19. The bill of lading contains the following relevant language:

> NOTE (1) Where the rate is dependent on value, shippers are required to state specifically in writing the agreed or declared value of the property as follows: "The agreed or declared value of the property is hereby specifically stated by the shipper to be not exceeding _____ per _____."
> **NOTE (2) Liability limitation for loss or damage on this shipment may be applicable. See 49 U.S.C.B'** [sic] **14706(c)(1)(A) and (B).**
> . . .
> RECEIVED, subject to individually determined rates or written contracts that have been agreed upon in writing between the carrier and shipper, if applicable, otherwise to rates, classifications and rules that have been established by the carrier and are available to the shipper on request.

Def.'s App. 19 (emphasis in original).

Later that day, a YRC driver arrived at Haemerle's home and loaded the Property onto the driver's truck. Pl.'s App. Supp. Mot. Summ. J. [hereinafter Pl.'s App.] 9. Before he departed, the driver asked Haemerle to sign a hard copy of the bill of lading that YRC had earlier emailed to Haemerle. Haemerle did so. The preprinted portion of the bill of lading Haemerle signed is identical to the bill of lading he received earlier that day. The signed bill of lading differs from the emailed version in two respects: certain blanks on the preprinted form have been filled in, and two adhesive stickers have been attached. Only one of the

ORDER – PAGE 2

stickers (the "Tariff Sticker") is at issue in this motion.  The Tariff Sticker states that "YRC tariffs are incorporated herein (copies available upon request).  YRC tariffs limit its liability. This shipment is subject to the terms and conditions of the Uniform Straight Bill of Lading as stated in the NMFC 100 series tariff."  *Id.* at 26.  Haemerle states that the driver did not discuss with him the Tariff Sticker in particular or the bill of lading in general, but he does not dispute that he signed the bill of lading.  Pl.'s App. 9.

The Tariff Sticker refers to a "NMFC 100 series tariff," and, correspondingly, YRC maintains on its website, a "Tariff 100 Item 780."  That document includes the following excerpts, applicable to moves within the United States:

> STANDARD LIABILITY LIMITS – Unless the tariff has a lower liability limit specified, in the event of loss, damage or delay to any shipment, the carrier's liability will not exceed $25.00 per pound per package, subject to a maximum liability of $100,000.00 per shipment, whichever is less, unless the shipper has requested excess liability coverage.
> . . .
> RELEASED VALUE GOODS – LIABILITY LIMITS – Carrier's level of liability will be limited to the released value declared by the shipper on the Bill of Lading at the time of shipment.
>
> If the shipper does not declare a released value on the Bill of Lading, YRC liability in the case of loss or damage is the lowest released value stated in YRC Tariffs 100 or 301.
> . . .
> EXCESS LIABILITY – Except as provided herein, shippers can request a maximum of $1.9 million of excess liability for customers who require carrier liability beyond the Standard Liability Limits.
> . . .
> To request Excess Liability coverage, shippers at time of shipment must write the following on the Bill of Lading, "Excess Liability Coverage Requested", and the dollar amount of Excess Liability coverage requested.

ORDER – PAGE 3

Def.'s App. 34–35.  These provisions were available to the public on YRC's website in April and May 2010.  *Id.* at 5.  Haemerle did not request any excess coverage, either on the bill of lading or directly from YRC.

### B.  *The Loss of and Damage to the Property*

Haemerle's Property was in good condition when the YRC driver loaded it into his van on April 26, 2010.  Defendant Freeman Decorating Services d/b/a Freeman Transportation ("Freeman") took delivery of the Property when it arrived at the trade show. Susan James signed for the Property on behalf of Freeman, confirming by her signature and the lack of any notations on the receipt that "all freight [was] received in good order" and that the shrinkwrap and banding on the skids were in place.  Def.'s App. 27.  James signed the receipt at noon on May 1, 2010.  *Id.*  The parties do not contest the validity of the receipt or James's signature.  Contradicting the receipt is a Freeman "Receiving Report," which is apparently an internal Freeman document.  The Receiving Report notes that only three skids were present when the document was prepared.  Pl.'s App. 14.  A Freeman employee prepared the Receiving Report at noon on May 1, 2010, *id.*, which was the same time James signed the receipt.  The lost skid was never found, and Haemerle maintains that other items in the three remaining skids arrived damaged.

After learning of the partial loss of and damage to the Property, Haemerle filed this suit in Texas state court, asserting various claims against All States, Freeman, and YRC. YRC removed the case to this Court.  All States never responded to Haemerle's complaint, and the Clerk accordingly entered default against All States [18].  Haemerle and Freeman

settled their dispute, and the Court thereafter dismissed Haemerle's claims against Freeman [32]. The only remaining claim at issue with respect to this motion is Haemerle's claim against YRC under the Carmack Amendment, 49 U.S.C. § 14706. YRC now moves for summary judgment or, alternatively, partial summary judgment, and Haemerle cross-moves for partial summary judgment.

## II. SUMMARY JUDGMENT STANDARD

Courts "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). In making this determination, courts must view all evidence and draw all reasonable inferences in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). The moving party bears the initial burden of informing the court of the basis for its belief that there is no genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

When a party bears the burden of proof on an issue, "he must establish beyond peradventure all of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). When the nonmovant bears the burden of proof, the movant may demonstrate entitlement to summary judgment either by (1) submitting evidence that negates the existence of an essential element of the nonmovant's claim or affirmative defense, or (2) arguing that there is no evidence to support an essential element of the nonmovant's claim or affirmative defense. *Celotex*, 477 U.S. at

322–25.  Once the movant has made this showing, the burden shifts to the nonmovant to establish that there is a genuine issue of material fact so that a reasonable jury might return a verdict in its favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).  Moreover, "[c]onclusory allegations, speculation, and unsubstantiated assertions" will not suffice to satisfy the nonmovant's burden. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc).  Indeed, factual controversies are resolved in favor of the nonmoving party "'only when an actual controversy exists, that is, when both parties have submitted evidence of contradictory facts.'" *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 525 (5th Cir. 1999) (quoting *McCallum Highlands, Ltd. v. Washington Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir. 1995)).

### III.  A MATERIAL FACT DISPUTE EXISTS REGARDING WHETHER YRC DELIVERED THE PROPERTY INTACT

The Carmack Amendment to the Interstate Commerce Act provides that a carrier is liable for any "actual loss or injury to the [shipper's] property caused by (A) the receiving carrier, (B) the delivering carrier, or (C) another carrier over whose line or route the property is transported."  49 U.S.C. § 14706(a)(1).  To succeed on a claim under the Carmack Amendment, a plaintiff must establish a prima facie case of negligence by demonstrating (1) delivery of the goods in good condition, (2) receipt by the consignee of less goods or damaged goods, and (3) the amount of damages. *Man Roland, Inc. v. Kreitz Motor Express, Inc.*, 438 F.3d 476, 479 (5th Cir. 2006).  If a plaintiff establishes a prima facie case, a rebuttable presumption arises that the carrier was negligent. *Id.* (citing *Frosty Land Foods Int'l v. Refrigerated Transp. Co.*, 613 F.2d 1344, 1346–47 (5th Cir. 1980)).  The carrier can

ORDER – PAGE 6

overcome this presumption by showing that it was free from negligence and that the damage was due to the inherent nature of the goods or attributable to an act of God, public enemy, the shipper, or public authority. *Id.* (citing *Mo. Pac. R.R. v. Elmore & Stahl*, 377 U.S. 134, 137 (1964)).

The Court finds that there is a material fact dispute regarding the second element of Haemerle's prima facie case: it is not clear from the summary judgment record whether YRC delivered the Property to Freeman intact. Specifically, one Freeman employee confirmed in writing at noon on May 1, 2010 that "all freight [was] received in good order." Def.'s App. 27. At the same time and on the same day, another Freeman employee wrote that only three of the four skids were present. Pl.'s App. 14. This discrepancy creates a fact issue sufficient for Haemerle's claim to survive summary judgment.[2]

## IV. THE BILL OF LADING LIMITS YRC'S LIABILITY

The parties dispute two aspects of YRC's attempt to limit its liability. First, they disagree about whether the Tariff Sticker became part of the bill of lading.[3] Second, they

---

[2]YRC objects to this document as inadmissible hearsay on the grounds that Haemerle did not disclose the identity of Steve Hagstette, Sr., who authenticated the Receiving Report as a business record. The Court concludes that, because Hagstette's testimony serves only to authenticate business records, the failure to identify Hagstette is harmless. Accordingly, the Court overrules YRC's objection. *See* FED. R. CIV. P. 37(c)(1) (disallowing use of improperly undisclosed information or witnesses unless failure to disclose was "substantially justified or harmless"); *Moore v. BASF Corp.*, Civ. A. No. 11-1001, 2012 WL 4344583, at *3 (E.D. La. Sept. 21, 2012) (finding failure to disclose harmless if witness's role was only to authenticate documents); *U.S. Tech. Corp. v. Ramsay*, No. 5:08-CV-218 DCB JMR, 2011 WL 2516597, at *1 (S.D. Miss. June 23, 2011) (same).

[3]Haemerle frames this issue as a disagreement about whether the bill of lading that YRC emailed him or the bill of lading that Haemerle actually signed defines YRC's liability.

disagree about whether the bill of lading – whether or not the Tariff Sticker was effective – in fact limits YRC's liability. The Court concludes that the Tariff Sticker is valid and enforceable, but, for the reasons set out below, the Court would reach the same result if it determined that the Tariff Sticker was invalid.

If a shipper establishes a prima facie case, a carrier may offer evidence that it limited its liability. The Fifth Circuit has adopted the Seventh Circuit's four-point "*Hughes* test" for determining whether a carrier has limited its liability. *Rohner Gehrig Co. v. Tri-State Motor Transit*, 950 F.2d 1079, 1081 (5th Cir. 1992) (en banc) (citing *Hughes v. United Van Lines, Inc.*, 829 F.2d 1407, 1415 (7th Cir. 1987)). The *Hughes* test, which statutory changes have since altered, requires that a carrier must (1) maintain a tariff within the prescribed guidelines of the Interstate Commerce Commission (now the Surface Transportation Board), (2) obtain the shipper's agreement as to his choice of liability, (3) give the shipper a reasonable opportunity to choose between two or more levels of liability, and (4) issue a receipt or bill of lading prior to moving the shipment. *Hoskins v. Bekins Van Lines*, 343 F.3d 769, 778 (5th Cir. 2003) (citing *Rohner*, 950 F.2d at 1081). The carrier bears the burden of proving that it complied with these requirements. *Nipponkoa Ins. Co., Ltd. v. Port Terminal R.R. Ass'n*, Civ. A. No. H-10-0284, 2011 WL 1103584, at *5 (S.D. Tex. Mar. 23, 2011) (citing *Rohner*,

---

From the Court's review of the record, however, it appears that analyzing this case in terms of two competing bills of lading creates confusion. The relevant difference between the two documents is the Tariff Sticker, which purports to incorporate YRC's tariff by reference. Haemerle, in other words, does not challenge the validity of the entire bill of lading that he signed; rather, he challenges the validity and effectiveness of the Tariff Sticker. The Court accordingly analyzes the bill of lading along these lines.

905 F.2d at 1081).  The Court finds that the bill of lading limited YRC's liability, regardless of the Tariff Sticker.

### A.  YRC Maintained a Tariff

Haemerle does not dispute that YRC maintained a tariff as required.  *See* Pl.'s Br. Opp'n Def.'s Mot. Summ. J. & Supp. Pl.'s Cross-Mot. Summ. J. [39] 10.  Moreover, the summary judgment record demonstrates that YRC maintained a tariff on its website.  The Fifth Circuit has previously found the first *Hughes* element satisfied where a shipper "maintains a ground tariff that is clearly posted on its internet site." *Tran Enters., LLC v. DHL Exp. (USA), Inc.*, 627 F.3d 1004, 1011 (5th Cir. 2010).  Moreover, YRC provided its tariff to shippers upon request.  Courts have found that similar arrangements satisfy the *Hughes* test in light of statutory changes, adopted after *Hughes* and *Rohner*, eliminating the Interstate Commerce Commission and requiring instead that a motor carrier must, at the shipper's request, provide the shipper with "a written or electronic copy of the rate, classification, rules, and practices upon which any rate applicable to a shipment, or agreed to between the shipper and the carrier, is based." 49 U.S.C. § 14706(c)(1)(B); *see Tronosjet Maint., Inc. v. Con-way Freight, Inc.*, Civ. A. No. H-10-3459, 2011 WL 3322800, at *2 (S.D. Tex. Aug. 2, 2011) (citing cases).  The Court thus concludes that YRC has satisfied this element.

### B.  YRC Provided a Reasonable Opportunity to Choose Between Levels of Liability and Received Haemerle's Agreement as to His Choice

"The choice of liability is inextricably intertwined with a reasonable opportunity to choose . . . ." *Rohner*, 950 F.2d at 1083.  In this case, regardless whether the Tariff Sticker

was effective, YRC gave Haemerle a reasonable chance to choose between two levels of liability and received his agreement regarding which level he chose.

*1. The Preprinted Portion of the Bill of Lading and the Tariff Sticker Provided the Opportunity to Choose Between Different Levels of Liability.* – The bill of lading states that YRC received the Property "subject to individually determined rates or written contracts that have been agreed upon in writing between the carrier and shipper, if applicable, otherwise to rates, classifications and rules that have been established by the carrier and are available to the shipper on request." Def.'s App. 26. These rates, classifications, and rules, in turn, are available in the tariff posted on YRC's website, which limits YRC's liability in cases like this one to "$25.00 per pound per package, subject to a maximum liability of $100,000.00 per shipment, whichever is less, unless the shipper has requested excess liability coverage." *Id.* at 34–35. The tariff also tells potential shippers how to request that YRC take on more liability: simply do so in writing on the bill of lading. *Id.* at 35. Moreover, the bill of lading contains a "declared-value box," which includes blanks for shippers, should they so choose, to declare a value for their goods. *See* Def.'s App. 19, 26 ("The agreed or declared value of the property is hereby specifically stated by the shipper to be not exceeding _____ per _____."). This provides an opportunity for shippers to elect a liability level other than that outlined in the tariff. *See, e.g.*, *Hollingsworth & Vose Co. v. A-P-A Transp. Corp.*, 158 F.3d 617, 619 (1st Cir. 1998) (noting that carrier provided shipper with two or more levels of liability where tariff provided certain level of maximum liability "unless the shipper

declare[d] otherwise"). As the summary judgment record indicates, Haemerle had this opportunity but did not act on it. *See* Def.'s App. 26.

Moreover, the Tariff Sticker provided an even clearer opportunity to choose between different levels of liability. The sticker states that "YRC tariffs are incorporated herein" and that "[t]his shipment is subject to the terms and conditions of the Uniform Straight Bill of Lading as stated in the NMFC 100 series tariff." Def.'s App. 26. By expressly incorporating the tariff's terms into the bill of lading, YRC provided Haemerle with more a more-than-ample opportunity to elect the coverage specified in the tariff or a different level of coverage that he himself could have specified on the bill of lading. *See Gulf Rice Ark., LLC v. Union Pac. R.R.*, 376 F. Supp. 2d 715, 722 (S.D. Tex. 2005) ("[W]hen a carrier's limiting terms are incorporated into the governing contract between the parties, the shipper is deemed to have constructive knowledge of the terms."). Thus, the bill of lading, whether or not the Court considers the Tariff Sticker, gave Haemerle the choice between levels of liability.

*2. **Haemerle's Opportunity to Choose Was Reasonable.*** – An opportunity is reasonable if "the shipper had both reasonable notice of the liability limitation, and the opportunity to obtain information necessary to making a deliberate and well-informed choice." *Johnson v. Bekins Van Lines Co.*, 808 F. Supp. 545, 549 (E.D. Tex. 1992), *aff'd*, 995 F.2d 221 (5th Cir. 1993) (citing *Hughes*, 829 F.2d at 1419; *Anton v. Greyhound Van Lines, Inc.*, 591 F.2d 103, 108 (1st Cir. 1978)). Haemerle argues that YRC did not provide him with a reasonable chance to choose between two different liability levels, either by way of the preprinted portion of the bill of lading or the Tariff Sticker.

As to the preprinted section, he asserts that the print is "illegible" and "tiny." Type size, however, is just one of the indicia of whether text provides a reasonable opportunity to elect one liability limit over another. *See Rohner*, 950 F.2d at 1084 (analyzing indicia of reasonableness such as absolute type size, relative type size, conspicuousness of location, availability of space to provide shipper's own valuation, etc.) Here, the type size, though indeed small, appears to be consistent throughout. That is, the language regarding liability limitation is no bigger or smaller than the language on the rest of the preprinted form. Additionally, other aspects of the bill of lading support the conclusion that Haemerle's opportunity was reasonable. First, the sentence expressly stating that "[l]iability limitation for loss or damage on this shipment may be applicable" is emboldened. Second, as outlined above, the bill of lading refers to liability limitation in several places. *See supra* section I.A. Third, the form provides preprinted blanks allowing a shipper to insert his or her own valuation of his property. Fourth, at least one reference to liability limitation on the form appears in a conspicuous location: the sentence proclaiming the availability of YRC's rates, classifications and rules  appears in the first sentence of the section of the bill of lading immediately above the signature block, and it immediately follows the capitalized word "RECEIVED."[4]  Additionally, Haemerle signed the bill of lading, certifying with his signature that he was "familiar with all the [document's] terms and conditions" and that he agreed to them.  Def.'s App. 19, 26.  Haemerle was thus on notice of the importance of

---

[4]The Court also notes that the Tariff Sticker was in a prominent place – the upper right corner of the page – and stood out from the rest of the bill of lading by virtue of its placement on top of the preprinted text.

ORDER – PAGE 12

reading and understanding the bill of lading's provisions.[5]   The Court consequently concludes that Haemerle had a reasonable opportunity to choose between two different levels of liability.

Haemerle further contends that the preprinted portion of the bill of lading fails to limit YRC's liability because it does not expressly refer to YRC's tariff or incorporate its terms by reference.  A bill of lading, however, need not expressly incorporate a tariff's terms by reference to provide a shipper with a reasonable opportunity to choose between two levels of liability.  *See Siren, Inc. v. Estes Express Lines*, 249 F.3d 1268, 1270–71 (11th Cir. 2001) ("Surely, the concept of a carrier and shipper who agree in writing to limit the carrier's liability is not bounded by a requirement that the carrier's tariff somehow be incorporated into the bill of lading.").[6]   The bill of lading states that the shipment is "subject to individually determined rates . . . , if applicable, otherwise to *rates, classifications and rules that have been established by the carrier and are available to the shipper on request.*"  Def.'s App. 26 (emphasis added).  This is sufficient.  It was incumbent on Haemerle to request to see these rates, rules, and classifications if he wanted to do so.  *See* 49 U.S.C. §

---

[5]Furthermore, YRC emailed Haemerle the preprinted bill of lading before a YRC driver even arrived at Haemerle's home, allowing him time to examine the document in detail, including at a higher magnification on his computer if necessary.

[6]Haemerle cites a number of cases purportedly standing for the proposition that a bill of lading must expressly incorporate a tariff in order to effectively limit a carrier's liability. The Court concludes that these cases are distinguishable on their facts and that they do not stand for a universal principal that a bill of lading must incorporate a tariff by reference. Regardless, as discussed below, the Court finds that the Tariff Sticker  did incorporate the tariff by reference.

ORDER – PAGE 13

14706(c)(1)(B) ("If the motor carrier is not required to file its tariff with the Board, it shall provide under section 13710(a)(1) to the shipper, *on request of the shipper*, a written or electronic copy of the rate, classification, rules, and practices upon which any rate applicable to a shipment, or agreed to between the shipper and the carrier, is based." (emphasis added)); *Fireman's Fund McGee v. Landstar Ranger, Inc.*, 250 F. Supp. 2d 684, 689 (S.D. Tex. 2003) ("[T]he *shipper* has the burden to request a copy of the carrier's tariff." (emphasis in original)). Had he done so, he would have learned of the terms in YRC's tariff. Based on these factors, the Court concludes that the preprinted portion of the bill of lading complied with the requirements of 49 U.S.C. § 14706(c)(1)(B) and provided a reasonable opportunity for Haemerle to choose between two levels of liability.

As to the Tariff Sticker, Haemerle does not dispute that its text expressly incorporates the tariff's terms into the bill of lading. *See AIM Controls, LLC v. USF Reddaway, Inc.*, No. H-08-CV-1662, 2008 WL 4925028, at *3 (S.D. Tex. Nov. 17, 2008) (holding that carrier's sticker on bill of lading purporting to incorporate tariff effectively did so). Rather, he maintains that the sticker materially changed the terms of the agreement and that the driver did not adequately discuss those changes with Haemerle. In support, he cites *Technology Prospects LLC v. Atlas Van Lines, Inc.*, in which the court found that a material change in a bill of lading occurred where the shipper and carrier had previously agreed to heightened liability insurance and the bill of lading did not reflect that agreement. No. 06-C-0174, 2006 WL 2591296, at *3 (E.D. Wis. Aug. 10, 2006). The court reasoned that such a change "can hardly be considered a reasonable opportunity to choose between different levels of

liability." Id. Here, by contrast, the Tariff Sticker did not materially change the bill of lading's terms. As discussed above, the bill of lading already provided that YRC's rates, classifications, and rules – i.e., the relevant information in the tariff – governed the shipment in the absence of a written agreement. Def.'s App. 19, 26. In expressly incorporating the tariff's terms, the Tariff Sticker merely reinforced the language on the face of the preprinted portion of the bill of lading. The Tariff Sticker thus did not amount to a material change; rather, it provided a further opportunity for Haemerle to inquire into the terms of the tariff and to choose between two different levels of liability.

In short, both the preprinted part of the bill of lading and the Tariff Sticker provided Haemerle with notice of YRC's liability limitation and provided him with the opportunity to make a deliberate, well-informed choice. The Court thus concludes that the opportunity provided Haemerle was reasonable.

### 3. *Haemerle Elected the Coverage Set out in YRC's Tariff.* – Haemerle did not fill in either blank in the declared-value box on the bill of lading, and he did not request extended coverage as the tariff allowed. Thus, by implication, Haemerle elected the liability coverage in the tariff. *See, e.g.*, *Mech. Tech. Inc. v. Ryder Truck Lines, Inc.*, 776 F.2d 1085, 1087 (2d Cir. 1985) ("By leaving the spaces blank, [the shipper] effectively selected the lowest freight rate and its corresponding low level of liability. Having had the opportunity on its own form to secure greater protection, [the shipper] 'cannot complain about the consequences of leaving the applicable spaces blank.'") (quoting *W.C. Smith, Inc. v. Yellow Freight Sys., Inc.*,

596 F. Supp. 515, 517 (E.D. Pa. 1983)). The Court accordingly concludes that YRC obtained Haemerle's agreement as to his choice of liability.

### C. YRC Issued a Bill of Lading Prior to Moving the Property

Haemerle argues that he did not receive the bill of lading with the Tariff Sticker attached until after YRC moved his shipment, and that the sticker is thus invalid. The summary judgment evidence, however, shows that Haemerle received, and signed, the bill of lading with the Tariff Sticker attached after the YRC driver *loaded* the Property, but before the driver drove away.[7] Pl.'s App. 9. The Court finds that YRC issued the bill of lading prior to moving the shipment, as the *Hughes* test requires. It is therefore valid as a means to limit YRC's liability.

### D. Conclusion as to YRC's Liability Limitation

The Court concludes, based on the summary judgment evidence, that there is no factual dispute regarding whether YRC limited its liability. The Court finds that YRC validly issued the bill of lading, including the Tariff Sticker; it also finds, however, that the bill of lading was sufficient even without the Tariff Sticker under the *Hughes* test to limit YRC's

---

[7]Though the driver did technically "move" the Property when he loaded it onto his truck, the Court concludes that this did not constitute "moving the shipment" as the *Hughes* test uses that term. Regardless of who loaded the shipment, Haemerle could have cancelled the shipment at any point before the driver drove away by simply refusing to sign the bill of lading. *See George N. Pierce Co. v. Wells Fargo & Co.*, 236 U.S. 278, 282 (1915) (observing that shipper's loading of freight onto train car occurred "[b]efore the shipment moved").

liability.  Accordingly, the Court determines that the bill of lading limits YRC's liability $25 per pound per skid.[8]

### CONCLUSION

The Court grants YRC's motion in part and denies it in part.  The Court grants the motion as to the issue of liability limitation and holds that YRC limited its liability for loss or damage to a maximum of $25 per pound per skid.  Because there is a factual dispute as to whether the Property arrived at the trade show intact, the Court denies the remainder of YRC's motion and denies the entirety of Haemerle's motion.

Signed February 25, 2013.

David C. Godbey
United States District Judge

---

[8]YRC asserts that each skid weighed 500 pounds, and that YRC's total liability per skid is thus $12,500.  YRC points to no summary judgment evidence, however, proving that each skid indeed weighed 500 pounds.  The bill of lading that Haemerle signed shows that the shipment weighed 2000 pounds and was divided into four skids, but nowhere does that document show that the skids were of equal weight.  If the lost skid did indeed weigh 500 pounds, YRC's liability as to that skid would be $12,500.  In any event, because the total shipment weighed 2000 pounds, YRC's total liability – even presuming that Haemerle can prove loss or damage to goods in each skid – cannot exceed $50,000.

ORDER – PAGE 17